UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DENISE WERTHEIM          :
                         :
     v.                  :     C.A. No. 14-029S
                         :
CAROLYN COLVIN           :
Commissioner of the Social Security :
Administration           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance ("SSDI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 15, 2014 seeking to reverse the decision of the Commissioner. On July 31, 2014, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision. (Document No. 8). On September 30, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 8) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 164-167) and SSDI (Tr. 168-174) on March 16, 2010 alleging disability since October 16, 2006. The applications were denied initially on November 23, 2010 (Tr. 66-69) and on reconsideration on May 7, 2011. (Tr. 74-80). Plaintiff requested an Administrative hearing. (Tr. 80). On May 7, 2012, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which time Plaintiff, represented by counsel, a vocational expert ("VE") and a medical expert ("ME") appeared and testified. (Tr. 27-36). The May 7, 2012 hearing was continued in order to obtain medical records from Plaintiff's primary care physician and to call upon a medical expert to testify. Therefore, a second hearing was held on October 1, 2012. (Tr. 37-57). The ALJ issued an unfavorable decision to Plaintiff on October 24, 2012. (Tr. 7-20). The Appeals Council denied Plaintiff's Request for Review on December 26, 2013, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by not finding her depression to be a "severe" impairment and also erred by failing to properly evaluate her obesity and benign intracranial hypertension.

The Commissioner disputes Plaintiff's claims and asserts that the evidence did not support a Step 2 finding that her depression was a "severe" impairment and that the ALJ did fully consider Plaintiff's other impairments.

### III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV.    THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.    Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the

Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

      **1.    Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

     (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

     (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

     (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

     (4)    Treatment, other than medication, for relief of pain;

     (5)    Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was thirty-seven years old on the date of the ALJ's decision. Plaintiff graduated high school in 1993 and completed CNA training in 1998. (Tr. 212). Plaintiff worked in the past as a phlebotomist, certified nurse's assistant and gas station assistant manager. (Tr. 18). Plaintiff's date last insured for DIB is December 31, 2011. (Tr. 12). Plaintiff alleges disability due to

degenerative disc disease, fibromyalgia, bursitis of the hips, osteoarthritis in both knees, hand and forearm pain and depression. (Tr. 74, 211).

Plaintiff's treating pain specialist did not document the presence of depression in late 2009/early 2010. (Tr. 284, 304). Plaintiff's mental status examinations were routinely normal with intact judgment and insight, times three alertness and orientation, intact memory and an appropriate mood and affect. (Tr. 323, 327, 368, 374, 378, 381, 403, 415, 435, 439, 444, 478, 484). Additionally, Plaintiff often reported to her doctors that she was not severely depressed. (Tr. 325, 369, 376, 383, 409, 437, 441, 446, 480, 486).

During a consultative examination with Dr. Wendy Schwartz, Ph.D., in August 2010, Plaintiff was able to sustain focus, spell world backwards, and perform serial sevens. (Tr. 336). Furthermore, Plaintiff's mental status examination was normal, she was alert and oriented times three, had normal speech, logical thoughts and associations, good judgment and fair-to-good insight, and had average intelligence without any significant evidence of cognitive loss. (Tr. 337). Dr. Schwartz diagnosed moderate depression with only mild to moderate functional limitations. (Tr. 338). Later that month, Dr. J. Stephen Clifford, Ph.D., opined that Plaintiff did not have any severe mental impairments. (Tr. 340, 352). Two months later, Plaintiff's psychiatric review was negative, and she demonstrated appropriate judgment and insight, and was alert and oriented times four. (Tr. 447). In May 2011, Plaintiff appeared emotionally stable and refused any treatment for depression. (Tr. 423). In an examination in late 2011, Plaintiff exhibited good judgment; normal mood and affect; orientation to time, place and person; and intact memory. (Tr. 593, 597, 601). While Plaintiff exhibited a depressed mood in 2012, she was oriented to person, place, problem and time, had an appropriate affect and had an intact memory. (Tr. 581, 584, 588). During that same time

period, her long-time treating physician, Dr. Alvin Bacon, stated that Plaintiff did not suffer "from an emotional impairment which significantly limit[ed]...her ability to engage in substantial, gainful activity in a competitive setting on a full-time, ongoing basis. (Tr. 622). Finally, on August 22, 2012, Plaintiff denied experiencing a depressed mood just several weeks prior to the October 2012 administrative hearing before the ALJ. (Tr. 629).

### A.  The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's fibromyalgia, chondropatella crepitus and scleroderma were "severe" impairments within the meaning of 20 C.F. R. §§ 404.1520(c) and 416.920(c). (Tr. 13). However, she concluded that Plaintiff's depression caused no more than minimal limitation in her ability to perform basic mental work activities and thus was a "non-severe" impairment. Id. At Step 3, the ALJ found that Plaintiff's impairments did not, either singly or in combination, meet or medically equal any of the Listings. (Tr. 14). As to RFC, the ALJ concluded that Plaintiff was able to perform a limited range of work at the light exertional level. Id. Based on this RFC, Plaintiff could not perform any of her past relevant work. (Tr. 18). However, at Step 5, the ALJ concluded that Plaintiff was not disabled because she was capable of performing other light-skilled and semi-skilled positions such as receptionist, cleaning work and factory inspecting and assembling work. (Tr. 19).

### B.  The ALJ Did Not Err at Step 2 in Finding Plaintiff's Depression to be a Non-severe Impairment

Plaintiff contends that substantial evidence does not support the ALJ's Step 2 finding that her depression was not a severe impairment. In particular, Plaintiff faults the ALJ for failing to

explicitly discuss and evaluate Dr. Schwartz's consultative report and for misstating her mental health treatment history.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28. Although Step 2 is a <u>de minimis</u> standard, <u>Orellana v. Astrue</u>, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See <u>Desjardins v. Astrue</u>, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In her Step 2 analysis, the ALJ thoroughly discussed Plaintiff's depression in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" impairment. (Tr. 13-14).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe <u>medically determinable</u> physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). See also <u>Teves v. Astrue</u>, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. <u>Id.</u>

The ALJ found that Plaintiff did not meet that burden as to her depression, and Plaintiff has shown no error in her finding.

As to Dr. Schwartz's report (Ex. 10F), the ALJ did not fail to evaluate it as argued by Plaintiff. In fact, the ALJ relied upon Dr Schwartz's examination findings in making her Step 2 determination that Plaintiff's depression was not a "severe" impairment. For instance, the ALJ accurately observed that Dr. Schwartz's 2010 report revealed that Plaintiff "drove to her appointment, reported normal activities of daily living, cooked, played computer games and showed only mild symptoms of depression." (Tr. 13). Moreover, Dr. Schwartz's report was considered by Dr. Clifford in his psychiatric review of Plaintiff's claim. (Ex. 11F). Dr. Clifford found that Plaintiff's depression was not a severe impairment and that she did not have significant functional limitations. (Tr. 340, 352).[1] As is her administrative prerogative, the ALJ gave "great evidentiary weight" to Dr. Clifford's findings because "they are not inconsistent with the medical evidence as a whole." (Tr. 17). In addition to Dr. Clifford's opinion, the ALJ also fairly observed that the record notes that Plaintiff had refused treatment for depression suggesting that it was not as severe as alleged. (Tr. 13, supported by Tr. 423). Accordingly, the ALJ's Step 2 finding is supported by substantial evidence and must be affirmed.

As to Plaintiff's treatment history, the ALJ found that Plaintiff had no "ongoing treatment for depression." (Tr. 13). Plaintiff contends that this is factually inaccurate because she actually saw Dr. Schwartz for psychotherapy several times in 2012. (See Tr. 490, 633-636). While the record contains progress notes apparently authored by Dr. Schwartz in 2012, they are illegible and

---

[1] The record also reflects that Dr. Bacon, a treating source, found no evidence of any disabling mental impairment. (Tr. 622).

thus it is difficult to ascertain what treatment was provided and what Dr. Schwartz observed. Id. Even if these notes are deemed to be evidence of a course of psychotherapy, it is still undisputed that Plaintiff received no treatment for depression for the vast majority of the relevant time period dating back to 2006. Moreover, while Plaintiff was seeing Dr. Schwartz, she apparently told Dr. Kadman that she did not feel severely depressed (Tr. 480) and denied a depressed mood to Dr. Bacon. (Tr. 629). Again, the ALJ's conclusions are supported by the record, and Plaintiff has shown no reversible error.

## C. Substantial Evidence Supports the ALJ's Assessment of Plaintiff's RFC

The ALJ considered all of the relevant evidence and properly determined that Plaintiff retained the RFC to perform a limited range of light work. (Tr. 14). Plaintiff argues that the ALJ's determination was not supported by substantial evidence because she failed to consider Plaintiff's obesity and benign intracranial hypertension. Plaintiff asserts that the ALJ erred by not finding that her obesity was a severe impairment and by not specifically discussing her obesity during the RFC assessment. However, Dr. Elizabeth Conklin addressed Plaintiff's obesity in her RFC assessment. (Tr. 357-358). Further, the ALJ gave Dr. Conklin's opinion great weight. (Tr. 17). "Thus, although the ALJ did not explicitly consider [Plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctor['s] opinions." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). Further, any error in failing to overtly address Plaintiff's obesity was harmless because Plaintiff did not point to any evidence or any medical opinion that supported Plaintiff's assertion that her obesity caused any limitations greater than those already incorporated into the ALJ's RFC finding that she could perform a limited range of light work. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004).

Next, Plaintiff contends that her RFC was not supported by substantial evidence because the ALJ never directly mentioned her benign intracranial hypertension, which Plaintiff identifies as one of the causes of "headaches, blurred vision and photophobia." (Document No. 8 at pp. 10-11). First, the fact that the ALJ did not use the specific term "benign intracranial hypertension" during the RFC assessment is irrelevant because the assessment's focus is on the totality of Plaintiff's impairments and how they functionally affect her ability to work. See Howard v. Comm'r of SSA, 276 F.3d 235, 239 (6th Cir. 2002) (The RFC is "an assessment of what [the claimant] can and cannot do, not what she does and does not suffer from.") In this case, the ALJ directly addressed the symptoms of Plaintiff's benign intracranial hypertension, and its effect on Plaintiff's ability to work by expressly considering her reported headaches and photophobia. (Tr. 16). Finally, although the ALJ did not directly consider Plaintiff's claims of blurry vision, any such alleged error is harmless because the record contains an almost completely normal eye exam, with visual acuities of 20/20 in both the left and right eyes, performed by an ophthalmologist at Massachusetts Eye & Ear on July 10, 2012. (Tr. 626). Plaintiff has shown no error in the ALJ's evaluation of her obesity or intracranial hypertension.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 8) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 18, 2014